NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

KENNETH JOHN NARDELLI and TAMMY M. NARDELLI, husband and wife, *Plaintiffs/Appellants*,

*v.*

METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island corporation; METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island corporation, *Defendants/Appellees*.

No. 1 CA-CV 13-0400
FILED 5-20-2014

_____

Appeal from the Superior Court in Maricopa County
No. CV 2004-019991
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

_____

COUNSEL

Dawson & Rosenthal, P.C., Sedona
By Steven C. Dawson, Anita Rosenthal
*Co-Counsel for Plaintiffs/Appellants*

Richard A. Dillenburg, P.C., Tempe
By Richard A. Dillenburg
*Co-Counsel for Plaintiffs/Appellants*

Steptoe & Johnson, L.L.P., Phoenix
By Floyd P. Bienstock, Bennett Evan Cooper
*Counsel for Defendants/Appellees*

Knapp & Roberts, P.C., Scottsdale
By David L. Abney
*Counsel for Amicus Curiae*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Donn Kessler joined.

---

**D O W N I E**, Judge:

¶1        Kenneth and Tammy Nardelli appeal from a judgment entered on remand after this Court's decisions in *Nardelli v. Metropolitan Group Property & Casualty Insurance Co.*, 230 Ariz. 592, 277 P.3d 789 (App. 2012), and *Nardelli v. Metropolitan Group Property & Casualty Insurance Co.*, No. 1 CA-CV 10-0350, 2012 WL 1537415 (App. May 1, 2012), (collectively, "*Nardelli I*").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In March 2009, a jury found that Metropolitan Group Property and Casualty Insurance Company and Metropolitan Property and Casualty Insurance Company (collectively, "MetLife") had committed bad faith in handling the Nardellis' insurance claim and awarded the Nardellis $155,000 in compensatory damages and $55 million in punitive damages.  During post-trial proceedings, the superior court reduced the punitive damage award to $620,000 and entered judgment against MetLife for $1,571,417.58.  The judgment included attorneys' fees of $496,442.50, Rule 68 sanctions of $247,317.24, and pre-judgment interest of $52,657.84.

¶3        By letter dated December 30, 2009, MetLife stated it would wire transfer the full amount of the judgment plus "interest through the date of the wire" to the Nardellis' counsel's trust account upon receipt of

2

wiring instructions.[1]   When the Nardellis declined to accept its tender, MetLife filed a Motion for Relief from Judgment Re Post-Judgment Interest, arguing it had made "an effective, unconditional tender of the full amount of the Judgment plus interest accrued through that date." Over the Nardellis' objection, the superior court granted MetLife's motion and issued an amended judgment on July 19, 2010.

**¶4**　　　　The Nardellis provided MetLife with wire transfer instructions on July 20, 2010, and MetLife wired $1,571,417.50 to their attorney's trust account two days later. The funds remained in that account while the Nardellis pursued their appeal, earning interest "between .10 and .15 percent."

**¶5**　　　　This Court reduced the punitive damage award to $155,000 in *Nardelli I*.  We also vacated the portions of the judgment awarding the Nardellis Rule 68 sanctions and hearing and transcript costs.  We directed the superior court to enter an amended judgment on remand.

**¶6**　　　　The Nardellis subsequently sent MetLife a check for $685,284.54, representing the amount MetLife had overpaid in light of the decision in *Nardelli I* "plus interest at the rate the Nardellis were able to earn."   The Nardellis accepted MetLife's calculation of the principal amount of restitution owing ($683,232.04), with the remaining $2052.50 representing interest.

**¶7**　　　　MetLife filed a motion asking the superior court to, *inter alia*, order the Nardellis to pay interest "on the overpaid amount at the 10-percent statutory rate" set forth in Arizona Revised Statutes ("A.R.S.") section 44-1201(A).   The Nardellis objected, arguing restitution is an equitable remedy and that the amount of prejudgment interest should approximate the rate of interest they actually earned.  The Nardellis did not contend, either in response to MetLife's motion or at oral argument in the superior court, that a statutory interest rate other than ten-percent applied.

**¶8**　　　　The superior court ruled MetLife was entitled to interest "at the statutory rate of 10% for an 'indebtedness or other obligation.'"   It entered a judgment that included interest on the restitution amount in the

---

[1] MetLife had previously sent the Nardellis' counsel a check, which was rejected for several reasons, including that it was not "in the form of cash."

sum of $136,272.03, representing the period of time between the wire transfer of funds to the Nardellis through the Nardellis' restitution payment to MetLife after *Nardelli I*. The Nardellis timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶9**　　　　The only issue properly before us is whether the superior court erred by not deviating from the statutory interest rate set forth in A.R.S. § 44-1201(A) based on equitable principles. Until filing their opening brief in this Court, the Nardellis never argued the statutory rate of interest was anything other than ten percent or that MetLife lacked a liquidated claim before the mandate issued in *Nardelli I*. "We do not consider arguments raised for the first time on appeal except under exceptional circumstances." *In re MH 2008-002659*, 224 Ariz. 25, 27, 226 P.3d 394, 396 (App. 2010); *see also Cullum v. Cullum*, 215 Ariz. 352, 355, ¶ 14 n.5, 160 P.3d 231, 234 n.5 (App. 2007) (As a general rule, a party cannot argue on appeal legal issues not raised below.).[2]

**¶10**　　　　Section 44-1201(A), which the parties acknowledged below was the applicable statute, provides, in pertinent part:

> Interest on any loan, indebtedness or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.

**¶11**　　　　In opposing MetLife's request for interest under § 44-1201(A), the Nardellis never argued their restitution obligation was *not* an "indebtedness or other obligation." Nor did they raise such an argument in their opening brief filed in this Court. We deem their argument to this effect, presented for the first time at oral argument, waived. *See State v. Powers*, 200 Ariz. 123, 129, ¶21, 23 P.3d 668, 674 (App. 2001) (issues raised for first time at oral argument are untimely and will not be considered).

---

[2] We similarly decline to address arguments presented in the *amicus* brief that the Nardellis failed to properly preserve. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 84, 638 P.2d 1324, 1330 (1981) (*amici curiae* may not create, extend, or enlarge issues properly raised by the parties).

¶12            "The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established." *Balt. & Ohio R.R. Co. v. United States*, 279 U.S. 781, 786 (1929); *see also Raimey v. Ditsworth*, 227 Ariz. 552, 559, ¶ 22, 261 P.3d 436, 443 (App. 2011) (when judgment reversed, judgment debtor who has satisfied the judgment is entitled to restitution); 5 C.J.S. *Appeal and Error* § 1157 (2014) ("The reversal of a judgment or decree gives rise to a right in favor of the party who has lost money or property by reason of the judgment or decree to have restitution made thereof, and a corresponding duty or obligation on the part of the party who has received the benefits of the money or property to make the restitution to the adverse party.").

¶13            When a judgment that has been satisfied is later set aside, the judgment debtor is "entitled to restitution, including both the amounts paid and interest from the dates of such payments at the rate established by the law of the state in which such sums were paid." *Raimey*, 227 Ariz. at 559, ¶ 22, 261 P.3d at 443; *see also Balt. & Ohio R.R. Co.*, 279 U.S. at 786 (Upon reversal of judgment, the overpaying party was "entitled to have the amounts so paid by it together with interest thereon from the dates of such payments at the rate established by the law of the state in which such sums were paid."). Although the restitution obligation itself is subject to equitable considerations, *see Raimey*, 227 Ariz. at 559, ¶ 21, 261 P.3d at 443 (repayment required when "justice requires restitution"); Restatement (First) of Restitution § 74 (1937) (restitution required unless it would be inequitable), the Nardellis voluntarily repaid the principal amount of the overpayment, obviating the need for the court to assess whether "justice require[d] restitution." *Raimey*, 227 Ariz. at 559, ¶ 21, 261 P.3d at 443. And we disagree with the Nardellis' contention that once the restitution amount was set, the superior court had the discretion to impose a rate of interest less than the statutory rate "or no interest at all."

¶14            "[W]here there is a specific statute on the subject, equity follows the law." *State v. Jacobson*, 22 Ariz. App. 260, 265, 526 P.2d 784, 789 (1974). "Courts of equity are as much bound by the plain and positive provisions of a statute as are courts of law. When rights are clearly established and defined by a statute, equity has no power to change or upset such rights." *Valley Drive-In Theatre Corp. v. Superior Court*, 79 Ariz. 396, 399, 291 P.2d 213, 214 (1955) (trial court exceeded its jurisdiction by limiting plaintiff's statutory remedy based on equitable considerations).

¶15            The Restatement (Third) of Restitution and Unjust Enrichment supports our conclusion. Section 18 states that, "[w]here money has been paid or collected to satisfy a judgment, a party entitled to

restitution under this section is normally entitled to interest on the money from the date of payment." Restatement (Third) of Restitution and Unjust Enrichment § 18 cmt. h. Section 53 notes that, "the availability of prejudgment interest is extensively regulated by local statute and decisional law." *Id.* at § 53 cmt. e. Only in the absence of a statutory interest rate does the Restatement suggest applying equitable principles to the rate of interest applicable to sums paid in restitution. *Id.*

¶16        The Nardellis' reliance on *Canal Insurance Co. v. Pizer*, 183 Ariz. 162, 901 P.2d 1192 (App. 1995), is unavailing. That case stands for the proposition that an insurer who interpleads insurance proceeds in compliance with the rules of civil procedure owes no prejudgment interest to individual claimants who later receive distributions. *Id.* at 164-65, 901 P.2d at 1194-95. It says nothing about interest obligations vis-à-vis restitution payments or the ability of a court to award less interest than mandated by an applicable statute.

## CONCLUSION

¶17        For the reasons stated, we affirm the judgment of the superior court.



Ruth A. Willingham · Clerk of the Court
FILED: MJT