IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-2436

ARIZONA CHEMICAL
COMPANY, LLC,

      Appellant,

v.

MOHAWK INDUSTRIES, INC. and
ALADDIN MANUFACTURING
CORPORATION,

      Appellees.

_____/

Opinion filed July 18, 2016.

An appeal from the Circuit Court for Duval County.
Lawrence P. Haddock, Judge.

Sylvia H. Walbolt and Christine Davis Graves of Carlton, Fields, Jorden, Burt, P.A., Tallahassee. Michael A. Abel, Jeremy J. Ches, and Andrew J. Steif of Holland & Knight, LLP, Jacksonville, for Appellant.

Thomas E. Bishop, Michael G. Tanner, and Casey W. Arnold of Tanner Bishop, Jacksonville.  Doug Scribner, Daniel C. Norris, and Jason Rottner of Alston & Bird, LLP, Atlanta, pro hac vice, for Appellees.

RAY, J.

      Arizona Chemical Company, LLC, appeals from an award of prejudgment interest in favor of Mohawk Industries, Inc., and Aladdin Manufacturing Corporation (collectively "Mohawk"). Arizona argues that the trial court erred in

awarding prejudgment interest for periods of time earlier than the dates Mohawk suffered the pecuniary losses for which the jury awarded damages. We agree. Accordingly, we reverse and remand for recalculation of Mohawk's prejudgment interest from the dates of Mohawk's losses.

**Facts**

The prejudgment interest award followed a final judgment entered on a jury verdict awarding Mohawk damages for Arizona's breach of contract and warranty. Arizona appealed that final judgment separately, and we affirmed it in all respects in a separate opinion. Ariz. Chem. Co., LLC v. Mohawk Indust., Inc. & Aladdin Mfg. Corp., 41 Fla. L. Weekly D1213 (Fla. 1st DCA May 20, 2016). The facts leading to the jury's findings of breach are detailed in that opinion. We now briefly summarize the facts pertinent to the prejudgment interest issue presently before us.

Arizona and Mohawk had a contractual relationship requiring Arizona to provide Mohawk a resin that Arizona specially designed and manufactured for use by Mohawk as a component of Unibond-brand carpet. Mohawk began using this resin, along with resin produced by another manufacturer, as part of the backing system for Unibond carpet in 2000. In 2005, Mohawk increased its usage of Arizona's resin in Unibond carpet. Around the same time, unbeknownst to Mohawk, Arizona changed its resin formula. Approximately three years later, in 2008, Mohawk began receiving an unusually high number of warranty claims

2

pertaining to the Unibond backing system. Although the claims rate spiked during that time, the majority of the carpet manufactured with Arizona's resin, both before and after 2005, did not generate any claims. Nevertheless, suspicious that Arizona's resin caused the backing failures and resulting claims spike, Mohawk stopped using that resin in March 2009. Even though the claims rate returned to normal, the brand suffered and was discontinued in 2011.

Mohawk determined that the carpet that was the subject of the backing-failure claims was manufactured from 2005 until the time that Mohawk stopped using Arizona's resin. After discovering the defect, Mohawk decided to sell some of the remaining carpet manufactured with that resin at a discount as a "second quality" product and to discard some of it. Mohawk sued Arizona under theories of breach of contract and breach of warranty to recover these losses, its expenses in fulfilling customer warranty claims, and profits it lost due to declining sales of Unibond carpet and the ultimate demise of the brand.

The jury awarded Mohawk damages for each of the aforementioned categories, and the trial court awarded Mohawk prejudgment interest for the damages arising from past warranty claims, "second quality" carpet, and discarded carpet. The trial court accepted Mohawk's argument that it was entitled to interest on all past damages from the date of Arizona's breach, meaning the date Arizona delivered defective resin. However, because that date could not be determined, the

3

court used the date that Mohawk had applied the resin to each roll of carpet that was the subject of a warranty claim or was discarded or sold as second quality.

Arizona argues on appeal, as it argued below, that prejudgment interest does not begin to accrue until the date that (1) the defendant had notice of the plaintiff's claim and (2) the plaintiff sustained the actual pecuniary loss for which it was awarded damages. Arizona is partially correct: there is no bright-line rule establishing that prejudgment interest begins to accrue only after the date the plaintiff has notice of a claim, but Florida law does link the date prejudgment interest begins to accrue to the date the plaintiff suffered the pecuniary loss for which the plaintiff is being compensated. See Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 214-15 (Fla. 1985). Arizona's notice argument is based on an exception to the general rule that has been applied in certain cases based on equitable principles. See Broward Cnty.v. Finlayson, 555 So. 2d 1211, 1213 (Fla. 1990). We resolve the dispute before us by first explaining the general rule and then briefly addressing the equitable exception. We then apply the general rule to the facts of this case and leave the equitable question open for the trial court to resolve in its discretion on remand.

### Florida's "Loss Theory" of Prejudgment Interest

In Argonaut Ins. Co. v. May Plumbing Co., the Florida Supreme Court distilled over a century of precedent governing awards of prejudgment interest in

4

tort and contract cases, concluding that prejudgment interest awards in this state are governed by the "loss theory." 474 So. 2d at 214-15. Under the loss theory, the purpose of awarding prejudgment interest is to make the plaintiff whole. Id. Thus, an award of prejudgment interest is not an opportunity for the plaintiff to obtain a windfall or for the court to penalize the defendant. See id.; see also Nat'l Educ. Ctrs., Inc. v. Kirkland, 678 So. 2d 1304, 1306 (Fla. 4th DCA 1996) (citing Metro. Dade Cnty.v. Bouterese, Perez & Fabregas Architects Planners, Inc., 463 So. 2d 526, 527 (Fla. 3d DCA 1985)). In consideration of the compensatory goal of prejudgment interest awards in Florida, the law of this state is that "when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." Argonaut, 474 So. 2d at 215. A verdict is said to have the effect of liquidating damages as long as the verdict establishes the loss and "the pertinent date can be ascertained from the evidence." Pace v. Property Fin. Auth., Inc., 24 So. 3d 1271, 1272 (Fla. 1st DCA 2009).

Mohawk contends that, in a breach-of-contract or warranty action, prejudgment interest accrues from the date of breach rather than the date the plaintiff sustains the pecuniary loss for which the jury awarded damages. This position is inconsistent with the loss theory of prejudgment interest as articulated in Argonaut. Indeed, in Bosem v. Musa Holdings, Inc., 46 So. 3d 42, 46 (Fla.

5

2010) (quoting William B. Hale, The Law of Damages, § 67 (2d ed. 1912)), the court reiterated that, whether the case arises in tort or contract, if the plaintiff's damages are "wholly pecuniary," the plaintiff should recover "not only the value of what he has lost, but receive it as nearly as may be as of the date of his loss."

Although some cases reference "the time of the accrual of the cause of action" as the time when prejudgment interest begins to accrue in a contract action,[1] we are aware of no controlling case since Argonaut that has made this reference in regard to a situation where the court was called upon to decide between two alternate dates for beginning the accrual of interest, one being the date the cause of action accrued and the other being the date an actual pecuniary loss was sustained. We acknowledge that Griffing Brothers Co. v. Winfield, 43 So.

---

[1] E.g., Bosem v. Musa Holdings, Inc., 46 So. 3d 42, 46 (Fla. 2010) (addressing whether prejudgment interest can be awarded for damages that were unliquidated before the verdict); Jackson Grain Co. v. Hoskins, 75 So. 2d 306, 310 (Fla. 1954) (distinguishing cases that disallow prejudgment interest for personal injury in favor of allowing such interest in tort cases that involve economic harm, while explaining, "[i]n actions growing out of contract and in some actions in tort we have approved the recovery of interest from the time of accrual of the cause of action"); Zorn v. Britton, 162 So. 879, 880 (1935) (recognizing that the supreme court had "upheld interest on damages to property and for breach of contract from the date of the accrual of the cause of action" but had not allowed interest in personal injury cases); see also Amerace Corp. v. Stallings, 823 So. 2d 110, 116 (Fla. 2002) (Pariente, J., dissenting) (opining that prejudgment interest should be allowed from the date of the verdict in personal injury cases because the verdict eliminates the speculative nature of damages for pain and suffering and mental anguish and making the historical observation that prejudgment interest has been allowed in contract cases, and in certain tort cases, "from the date of the loss or the accrual of [the] cause of action").

687, 691 (Fla. 1907), appears to support Mohawk's position. However, to the extent <u>Winfield</u> allows the recovery of prejudgment interest from a date preceding the plaintiff's actual loss, we must conclude that it was superseded by <u>Argonaut</u>. Indeed, <u>Winfield</u> has not been cited in any published opinion on the subject of prejudgment interest since <u>Argonaut</u>, and <u>Argonaut</u> itself did not cite <u>Winfield</u>.

Consistent with <u>Argonaut</u>, this Court has recognized that the date the cause of action accrues may not always be the dispositive date for prejudgment interest, even in a contract action. In <u>Craigside, LLC v. GDC View, LLC</u>, 74 So. 3d 1087, 1092 (Fla. 1st DCA 2011), we noted, "*Generally*, interest awarded as damages in a contract action runs from the date when the right to recover on the claim became vested or accrued, which is *ordinarily* the date of the breach or the date when payment was due under the contract." This observation makes sense because, in many breach-of-contract cases, the damages are direct, occurring simultaneously with the breach. E.g., <u>Lumbermens Mut. Cas. Co. v. Percefull</u>, 653 So. 2d 389, 390 (Fla. 1995) (holding that prejudgment interest began to accrue on the date payment was due to the plaintiff, but wrongfully withheld, under the terms of the parties' contract); <u>Craigside</u>, 74 So. 3d at 1092 (holding that interest was to run from the date a condominium developer was contractually obligated to return a sum of money but failed to do so); <u>Thomas v. Toth</u>, 539 So. 2d 8, 9 (Fla. 2d DCA 1989) (explaining that buyers of property that was not as promised "suffered their loss

7

when they paid for the property and title was transferred"). In such cases, the date the cause of action accrues is the same as the date of loss. In some cases, such as the instant case, the pecuniary loss caused by a breach of contract does not occur until sometime later. See, e.g., Pegasus Helicopters, Inc. v. United Techs. Corp., 35 F.3d 507, 512-13 (10th Cir. 1994) (holding, under Colorado law, that prejudgment interest on consequential damages flowing from breach of express warranty ran from the date the plaintiff "suffered the loss of each business opportunity or otherwise actually incurred the damages").

As we explained in Capitol Environmental Services, Inc. ["CES"] v. Earth Tech, Inc., 25 So. 3d 593, 597 (Fla. 1st DCA 2009), which was a breach-of-contract action, "[d]amages can become fixed on different dates for purposes of an award of prejudgment interest." The difference in dates depends on a difference in the timing of particular losses. See CES, 25 So. 3d at 597. In CES, a subcontractor breached a contract requiring it to obtain insurance to protect the contractor from personal injury claims. Id. at 595. Thereafter, the contractor was named in a personal injury lawsuit of the type the contractor was supposed to have been insured against. Id. When the subcontractor's insurer denied coverage, the contractor filed a declaratory judgment action against the insurer. Id. The declaratory judgment action resulted in a judgment for the insurer. Id. Meanwhile, in the personal injury suit, the contractor filed a third-party complaint against the

8

subcontractor for breach of contract and contractual indemnity. Id. The contractor prevailed on these claims, and its damages included the attorneys' fees and costs it expended in pursuing the declaratory judgment action and defending against the personal injury action. Id. at 595-96. This Court determined that prejudgment interest on these aspects of the damages should run from two different dates: the interest on the damages related to the declaratory judgment action was to run from the date that action concluded, and the interest on the damages related to the personal injury action was to run from the date the contractor settled that case. Id. at 597. Thus, even though the losses the contractor incurred in both the declaratory and the personal injury action resulted from the subcontractor's single breach in failing to obtain insurance for the contractor in accordance with their contract, those losses were incurred on separate, subsequent dates, and prejudgment interest was determined according to those dates.

In sum, our review of all recent controlling precedent leads us to the conclusion that the beginning date for the accrual of prejudgment interest depends on the timing of the pecuniary loss for which damages have been awarded, not the type of action the plaintiff has brought. Whether the case sounds in tort or contract, when prejudgment interest is proper, it is to be awarded from the date of the plaintiff's actual loss, be that loss a diminution in the value of the plaintiff's property, a payment the plaintiff has made to a third party, or some other form of

pecuniary loss for which prejudgment interest is authorized. See Argonaut, 474 So. 2d at 214-15; Bosem, 46 So. 3d at 46.

## An Equitable Exception to the Loss Theory

As an exception to the general rule set forth in Argonaut, courts sometimes calculate prejudgment interest from a date later than the date of the plaintiff's actual loss, where unique facts and "considerations of fairness" militate against calculating prejudgment interest from the date of actual loss. Broward Cnty.v. Finlayson, 555 So. 2d 1211, 1213 (Fla. 1990); see, e.g., Volkswagen of Am., Inc. v. Smith, 690 So. 2d 1328 (Fla. 1st DCA 1997); Cuillo v. McCoy, 810 So. 2d 1061 (Fla. 4th DCA 2002); Ganot Corp. v. J.M.G. Constr. Corp., 560 So. 2d 804 (Fla. 4th DCA 1990). The trial court in this case did not address the question of whether equitable considerations might justify moving the prejudgment interest date forward. Therefore, we cannot tell whether the court determined that the equities were not in Arizona's favor or whether the court declined to recognize an equitable exception to the general prejudgment interest rule. We need not address that issue further because the trial court applied an incorrect general rule. This error must be corrected before the trial court can decide whether to make any forward adjustments based on equity.

## Application of the Loss Theory to the Instant Case

In the instant case, Mohawk sued to recover for losses that occurred after the

date Arizona breached the parties' contract and its warranty. Often, Mohawk sustained these losses years later, when it paid warranty claims on carpet that had been installed for some time before the defects surfaced. In some cases, Mohawk may have realized the losses closer to the time of the breach, but still later than the breach, when it made the decision to dispose of carpet without receiving full price rather than risk warranty claims on it. Under these circumstances, Mohawk was not entitled to recover prejudgment interest from the date the defective resin was delivered or applied to the carpet. Rather, Mohawk was entitled to recover prejudgment interest from the date it realized each loss in dollars. See CES, 25 So. 3d at 596-97; cf. Charles Buzbee & Sons, Inc. v. Falkner, 585 So. 2d 1190, 1191 (Fla. 2d DCA 1991) (holding, in a tort action for crop damage, that prejudgment interest was to run from the date the plaintiff "realized in dollars the degree of loss he sustained as a result of" the defendant's spraying of an herbicide in a neighboring field); but see Centex-Rooney Constr. Co. v. Martin County, 706 So. 2d 20 (Fla. 4th DCA 1997) (concluding that prejudgment interest was properly awarded from the date of breach, even though some damages were incurred later); Pine Ridge at Haverhill Condo. Ass'n, Inc. v. Hovnanian of Palm Beach II, Inc., 629 So. 2d 151 (Fla. 4th DCA 1993) (awarding damages from date defective property was turned over where some damages, by their nature, would have been incurred later).

11

It should be emphasized that Mohawk did not sue to recover the difference in value between the resin it received and the value of the resin it ordered. Had Mohawk sued and recovered for this loss, it would have been entitled to prejudgment interest from the date the cause of action accrued simply because that date would have been incidentally the same as the date of loss. Cf. Craigside, 74 So. 3d at 1092; Reid v. Crucet, 615 So. 2d 858, 858 (Fla. 1st DCA 1993); M.L. Montgomery, Inc. v. Grassam, 580 So. 2d at 659, 661 (Fla. 4th DCA 1991); Ft. Wayne Mortg. Co. v. Warthen, 513 So. 2d 228, 229 (Fla. 1st DCA 1987); Thomas, 539 So. 2d at 9. Because the date of breach was not the same date as the date of loss under the facts of this case, the trial court erred in using the date that best reflected the date of breach.

The relevant dates for determining when prejudgment interest began to accrue in this case are the dates Mohawk sustained actual pecuniary losses by fulfilling customer warranty claims, selling carpet at a deep discount, or discarding carpet. Using these dates to determine when prejudgment interest began to accrue will make Mohawk whole. The earlier date the trial court settled on provided Mohawk a windfall by awarding interest for a period of time when Mohawk had suffered no pecuniary loss recognized by the jury and, in fact, was enjoying profits from the sale of carpet that only later gave rise to warranty claims.

## Conclusion

For the foregoing reasons, we reverse and remand for the trial court to reassess prejudgment interest based on the dates Mohawk sustained actual losses where those dates can be ascertained from the evidence, unless the court finds that equity requires a delay in the beginning date for the accrual of prejudgment interest. If the dates of Mohawk's losses cannot be ascertained with precision, the court should select, as to each loss, the earliest date by which the evidence shows the loss must have been sustained. See Berloni S.p.A. v. Della Casa, LLC, 972 So. 2d 1007, 1012 (Fla. 4th DCA 2008) (requiring calculation of prejudgment interest from the last possible date of damage, where the exact date was unknown).

REVERSED and REMANDED with instructions.

ROBERTS, CJ., and LEWIS, JJ., CONCUR.